## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAMEL HUTCHINSON,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 22-CV-2652** |
| | : | |
| **NORTHAMPTON COUNTY PRISON,** | : | |
| **Defendant** | : | |

### MEMORANDUM

**PRATTER, J.**                                          **JANUARY** /2, **2023**

Currently before the Court is an Amended Complaint filed by Plaintiff Ramel
Hutchinson, a prisoner incarcerated at Northampton County Prison. (*See* ECF No. 13.) For the
following reasons, the amended complaint will be dismissed in part with prejudice and in part
without prejudice. Mr. Hutchinson will be given an opportunity to cure the noted deficiencies by
filing a second amended complaint.

## I. FACTUAL ALLEGATIONS

Mr. Hutchinson's initial Complaint named only Northampton County Prison, and he
asserted that he had been deprived of his "personal rights, privileges, or immunities." (Compl.
(ECF No. 1) at 2-3.)[1] More specifically, Mr. Hutchinson contended that since the start of his
incarceration on February 23, 2022, he and other "mental health inmates [were] locked in our
cells for 22 hours a day giving us 2 hours of 'rec' time as [] the normal day to day operation."
(*Id.* at 4-5.) Mr. Hutchinson sought group and therapy sessions for the mental health inmates,
and more recreation time, asserting that two hours outside of their cells is not enough. (*Id.* at 5.)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

Mr. Hutchinson sought two million dollars in damages to cover "all medical expenses for after care." (*Id.*)

In a September 19, 2022, Memorandum and Order, the Court granted Mr. Hutchinson leave to proceed *in forma pauperis* and dismissed his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Hutchinson v. Northampton Cty. Prison*, No. 22-2652, 2022 WL 4331605, at *3 (E.D. Pa. Sept. 19, 2022). The Court dismissed the Prison because a jail is not a defendant subject to liability under § 1983. *Id.* at 2. However, because the Court could not then determine that Mr. Hutchinson would never be able to assert a plausible claim based on the conditions of his confinement, he was granted leave to file an amended complaint in the event he could cure the defects identified by the Court. (*Id.*; *see also* ECF No. 11.) Mr. Hutchinson was also instructed that any amended complaint was required to state a claim without reference to the initial Complaint or other documents filed in this case, and suggested he be mindful of the Court's reasons for dismissing his initial Complaint. (ECF No. 11.)

Mr. Hutchinson returned to Court with an amended complaint, which he completed by utilizing a standard complaint form for filing a civil action pursuant to 42 U.S.C. § 1983, naming the following Defendants: (1) Northampton County, (2) David Penchishen (identified in the pleading as the Warden of Northampton County Prison), (3) PrimeCare Medical, (4) Denise Doe (identified as a "PrimeCare Medical Mental Health Worker"), (5) Lt. Cruz, (6) Chris Gebhardt (identified as the "Religious Coordinator" at Northampton County Prison), and (7) C.O. Georges. (Am. Compl. (ECF No. 13) at 2-4.) Mr. Hutchinson raises constitutional claims based on the conditions in which he says he has been and is currently confined at Northampton County Prison. The amended complaint states or suggests that Mr. Hutchinson was at times a pretrial detainee

and at times a convicted and sentenced inmate during the relevant events. (*Id.* at 5; *see also Commonwealth v. Hutchinson,* CP-48-CR-0000884-2022 (C.P. Northampton).)

Mr. Hutchinson asserts that he has been confined at Northampton County Prison since February 22, 2022. (*Id.* at 6- 7.) He alleges that he is housed in the mental health area of the prison where human feces is "thrown and spread" by other inmates on a daily basis. (*Id.* at 7.) The "jail workers" refuse to clean up the feces and although he has told Defendants Georges and Cruz about it, "they both said they won't do anything, it's above them." (*Id.*) Mr. Hutchinson also avers that he has "to listen to people scream and bang on the gates [un]til 4 am and [he] doesn't get any sleep." (*Id.*) Mr. Hutchinson contends that there are "no mental health programs" at Northampton County Prison, and Denise Doe has told him that "she can't do anything" about this. (*Id.*) He avers that "the jail" will not let him sign up for GED classes, and he is unable to attend church because there is "no church" at Northampton County Prison. (*Id.*) Mr. Hutchinson avers that he is depressed and unable to improve himself to "get ready" for release to the community. (*Id.*) He is locked up "23 and 1" with no vending machines or televisions on his tier even though a different tier with the same "custody level" has them. (*Id.*) Mr. Hutchinson alleges that he has written the warden and the jail board about the conditions at Northampton County Prison. (*Id.*)

Based on these allegations, Mr. Hutchinson brings claims pursuant to 42 U.S.C. § 1983 for violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution, noting cruel and unusual punishment, conditions of confinement, and violations of his right to due process, equal protection, and free exercise of religion. (*Id.* at 3.) Mr. Hutchinson also brings claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (*Id.*) Mr. Hutchinson avers that he has "irreversible mental damages and anguish" including

3

depression, anxiety, and PTSD. (*Id.* at 6.) He seeks $100,000 in compensatory damages and $10,000 in punitive damages "for permanent harm to [his] mental state and being." (*Id.*) He also requests that mental health and religious programs be made available, and he wants "TVs and vending machines [placed] on G-tier and H-tier just like B-4." (*Id.*)

## II.    STANDARD OF REVIEW

Because Mr. Hutchinson is proceeding *in forma pauperis*, his amended complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the pleading if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Mr. Hutchinson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However,

"*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Importantly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### A.   Official Capacity Claims

In addition to naming Northampton County as a defendant, Mr. Hutchinson names the following Northampton County employees: Warden Penchishen, Lieutenant Cruz, Correctional Officer Georges, and Chris Gebhardt. (Am. Compl. at 2-4.) Mr. Hutchinson also names PrimeCare Medical, and its employee, Denise Doe. (*Id.* at 3.) The individual defendants are sued in both their individual and official capacities. (*Id.* at 2-4.) The official capacity claims against the individual defendants, however, will be dismissed with prejudice as duplicative of the claims against their employers, who are also sued as defendants. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) ("Because Cuvo is suing Palmer Township, the suit against the officers in their official capacities is redundant."); *Love-Lane v.*

*Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983

claim against Martin in his official capacity as Superintendent is essentially a claim against the

Board and thus should be dismissed as duplicative."); *see also Kentucky v. Graham*, 473 U.S.

159, 166 (1985) ("As long as the government entity receives notice and an opportunity to

respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against

the entity.").

### B.     Claims Against Northampton County and PrimeCare Medical

To plead a basis for liability against a municipal entity under § 1983, a plaintiff must

allege that the municipality's policy or custom caused the violation of his constitutional rights.

*See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). "To satisfy the pleading

standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v.

City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker

possess[ing] final authority to establish municipal policy with respect to the action issues an

official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798

(3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

"'Custom, on the other hand, can be proven by showing that a given course of conduct, although

not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to

constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a

custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had

knowledge of similar unlawful conduct in the past, failed to take precautions against future

violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations

and alterations omitted). In other words, "[c]ustom requires proof of knowledge and

acquiescence by [a municipal] decisionmaker." *McTernan*, 564 F.3d at 658; *see also Baker v.*

*Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiff "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").[2]

Mr. Hutchinson has not pled a municipal policy or custom with respect to any of the alleged constitutional violations, that such policy or custom caused the constitutional violation, or municipal failures amounting to deliberate indifference.  General allegations that simply paraphrase the standard for municipal liability are too vague and undeveloped to support a plausible claim.  *See Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases); *see also Iqbal*, 556 U.S. at 680-81 (finding that plaintiff failed to plead sufficient facts to state a claim for purposeful and unlawful discrimination based on harsh conditions of confinement). Accordingly, the claims against Northampton County, are not plausible and will be dismissed without prejudice.

Mr. Hutchinson has also named PrimeCare Medical, the private contractor providing medical services at Northampton County Prison, as a defendant.  The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir.

---

[2] A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

2015) (quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)).

Rather, in order to hold a private health care company like PrimeCare Medical liable for a

constitutional violation under § 1983, Mr. Hutchinson must allege the provider had "a relevant . .

. policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*,

318 F.3d 575, 583-84 (citing *Bd. of the Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520

U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095,

at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a

prison to provide health care for inmates, . . . it can only be held liable for constitutional

violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious

medical needs.") (citations and quotations omitted).  Because Mr. Hutchinson makes no

allegation that medical treatment was delayed, denied, or refused due to a policy of PrimeCare

Medical, his claim against the company is not plausible and will be dismissed.

### C.    Claims Against Warden Penchishen

Mr. Hutchinson does not clearly state the basis for a claim against Defendant Penchishen.

He presents no factual allegations concerning him.  To the extent that Mr. Hutchinson seeks to

bring a claim against Defendant Penchishen for holding a supervisory position, Mr. Hutchinson

has not stated a plausible claim.  There are "two general ways in which a supervisor-defendant

may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med.,

Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S.

822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the

consequences, established and maintained a policy, practice or custom which directly caused

[the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*,

372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be

personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6). Here, Mr. Hutchinson has failed to allege that Defendant Penchishen established and maintained a policy, practice, or custom with deliberate indifference that caused constitutional harm, and he has failed to allege Defendant Penchishen's personal involvement in any alleged underlying constitutional violation. Accordingly, the individual capacity claims against Defendant Penchishen are not plausible and will be dismissed without prejudice.

**D.    Claims Against Chris Gebhardt**

Mr. Hutchinson names Chris Gebhardt as a defendant to this action and identifies him as a Religious Coordinator for Northampton County Prison (Am. Compl. at 4), but presents no allegations against him in the body of the amended complaint. In other words, Mr. Hutchinson has not alleged what Defendant Gebhardt did, or did not do, to violate his constitutional rights. To the extent Mr. Hutchinson seeks to present a claim against Chris Gebhardt, Mr. Hutchinson has not alleged sufficient facts to proceed against him at this time. Accordingly, Mr. Hutchinson's claims against Defendant Gebhardt are not plausible and will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### E.    Conditions of Confinement

Though "[t]he Constitution 'does not mandate comfortable prisons,'" the conditions to which inmates are exposed must be humane. *Cook v. Corbett*, No. 14-5895, 2015 WL 4111692, at *7 (E.D. Pa. July 8, 2015) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). The Eighth Amendment governs claims brought by convicted and sentenced inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs similar challenges raised by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted and sentenced prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell v. Wolfish*, 441 U.S. 520, 538-39, 539 n.20 (1979)). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Mr. Hutchinson raises claims regarding the conditions of his confinement at Northampton County Prison, asserting that he is housed in an area where human feces is "thrown and spread" on a daily basis and "jail workers" refuse to clean it up. (Am. Compl. at 7.) Mr. Hutchinson also avers that he is unable to sleep because "people scream and bang on the gates" throughout the night. (*Id.*) Although the conditions described by Mr. Hutchinson are certainly not pleasant or desirable in the least, his allegations accepted as true do not state a plausible claim that the conditions at Northampton County Prison are "sufficiently serious" to amount to a constitutional violation. While Mr. Hutchinson asserts that Defendants Georges and Cruz said they would not "do anything" about other inmates throwing excrement, he does not allege that any human feces was thrown into his cell, or that Georges and Cruz forced him to remain confined in a cell with filthy conditions in it. Thus, Mr. Hutchinson has failed to plausibly assert that his rights were violated by exposure to human feces and that the defendants were deliberately indifferent to such exposure. *See Florio v. Canty*, 954 F. Supp. 2d 227, 235 (S.D.N.Y. 2013) (inmate failed to state Eighth amendment claims when he was "exposed to waste only for brief periods; it appears that his total exposure was less than a few hours"); *Wyland v. Brownfield*, No. 08-1601, 2011 WL 5445305, at *5 (W.D. Pa. Nov. 9, 2011) ("[H]aving to clean a moldy shower with backed up sewage without gloves or a mask on [one] single occasion simply do[es] not give rise to a substantial risk of serious harm or challenge common standards of decency"); *Ortiz v. Dep't of Correction of City of New York*, Civ. A No. 08-2195, 2011 WL 2638137, at *7 (S.D.N.Y. Apr. 29, 2011), *report and recommendation adopted sub nom. Ortiz v. Hernandez*, 2011 WL 2638140 (S.D.N.Y. July 5, 2011) ("[W]here exposure to such waste is intermittent or limited to a matter of hours, courts normally will not entertain such actions"); *Sterling v. Smith,* No. 06-103, 2007 WL 781274, at *4 (S.D. Ga. Mar. 8, 2007) (no Eighth Amendment violation where there was no

allegation that "prison officials condone such behavior [throwing fecal matter] or force [inmates] to remain in filthy conditions" and where plaintiff did not "allege that prison officials allow[ed] an unsanitary condition to persist by failing to clean the prison or refusing to provide him with cleaning supplies"); *Zimmerman v. Seyfert,* No. 03-1389, 2007 WL 2080517, at *29 (N.D.N.Y. July 19, 2007) (no Eighth Amendment violation where officer delayed letting plaintiff shower for approximately one-half hour after feces and urine had been thrown on him by another inmate); *Hayes v. Waite,* No. 06-101, 2007 WL 2827730, at *7 (M.D. Fla. Sept. 27, 2007) (no Eighth Amendment violation where other inmates created the unsanitary conditions by throwing feces and urine and where there was no allegation that Defendants failed to clean up after such incidents); *Snyder v. McGinnis,* No. 03-902, 2004 WL 1949472, at *9-10 (W.D.N.Y. Sept. 2, 2004) (no Eighth Amendment violation where prison officials moved inmate next to plaintiff despite knowledge that they were enemies because risk that feces would be thrown at inmate did not rise to level necessary to sustain claim); *McNatt v. Unit Manager Parker,* No. 99-1397, 2000 WL 307000, at *4 (D. Conn. Jan. 18, 2000) (where plaintiff deprived of toilet paper and cleaning supplies for one day, the court held that although the conditions were not pleasant, "the brief duration of the deprivation causes the court to conclude that the conditions did not constitute an Eighth Amendment violation").

Mr. Hutchinson's allegation that he has "to listen to people scream and bang on the gates [un]til 4 am" (*see* Am. Compl. at 7), does not provide the Court with enough information to determine whether the noise disturbance is objectively serious so as to rise to the level of a constitutional violation. Mr. Hutchinson has failed to provide any specifics regarding the level of noise or its frequency, or that he brought it to the attention of any prison officials at Northampton County Prison. Moreover, Mr. Hutchinson does not allege how the noise posed a

substantial risk of serious harm to his health or safety, or that any official knew of and disregarded that risk.  Accordingly, Mr. Hutchinson has failed plausibly to assert that his rights were violated by exposure to excessive noise and that the defendants were deliberately indifferent to the level of exposure to noise.  "High levels of noise are not per se Eighth Amendment violations; a violation requires a risk of injury, which can include psychological injury stemming from persistent noise and lack of sleep." *Tineo v. Fed. Bureau of Prisons*, No. 19-19403, 2021 WL 689144, at *3 (D.N.J. Feb. 23, 2021) (citing *Whitney v. Wetzel*, 649 F. App'x 123, 127 (3d Cir. 2016) (finding that noise in the prison's special management unit was "irritating," not "so excessive and pervasive that it posed a serious risk of injury") (citing *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) ("Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, <u>rather than injure</u> the prisoner does not demonstrate a disregard for the prisoner's welfare." (emphasis added))).  *Compare, Antonelli v. Sheahan,* 81 F.3d 1422, 1433 (7th Cir.1996) (allegations of loud noise occurring every night, often all night long, which interrupted or prevented inmate from sleeping, were sufficient to state an Eighth Amendment claim), and *Lunsford v. Bennett,* 17 F.3d 1574, 1580 (7th Cir. 1994) (complaint of a few hours of periodic loud noises insufficient to state Eighth Amendment claim).  Because the Court cannot say at this time that Mr. Hutchinson can never assert a plausible claim against an appropriate defendant concerning the conditions of confinement claims relating to his complaints about noise or human feces, Mr. Hutchinson will be granted leave to amend these portions of his claim.

Because Mr. Hutchinson's assertions are vague, conclusory, and do not provide any factual allegations pertaining to the nature or length of the alleged deprivations, the amended complaint does not support any plausible conditions of confinement claims under the *Iqbal*

pleading standard. Additionally, even assuming *arguendo* that his noise allegations could be

liberally construed to rise to the level of an Eighth or Fourteenth Amendment claim, Mr.

Hutchinson has not adequately tied those allegations to any of the named defendants. *See Rode*,

845 F.2d at 1207. Accordingly, Mr. Hutchinson's foregoing claims based on the conditions of

his confinement will be dismissed without prejudice and Mr. Hutchinson will be permitted the

opportunity to amend his pleading if he can cure the noted defects in these claims.

Mr. Hutchinson also asserts that there are no televisions or vending machines on his tier

even though a different tier with the same "custody level" has them.[3]  (Am. Compl. at 7.)  This

---

[3] To the extent Mr. Hutchinson asserts that his equal protection rights have been violated
because he does not enjoy the same privileges as inmates confined on a different tier (*see* Am.
Complaint at 3, 6-7), he has failed to set forth a plausible claim. "The Equal Protection Clause
of the Fourteenth Amendment commands that no State shall 'deny to any person within its
jurisdiction the equal protection of the laws,' which is essentially a direction that all persons
similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S.
432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To establish an equal
protection violation, a prisoner must allege "that he was treated differently than other similarly
situated inmates, and that this different treatment was the result of intentional discrimination
based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d
Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)).
Mr. Hutchinson does not allege that the denial of access to a TV and vending machines
was due to his race or membership in a protected class. To the extent that his allegations may be
read as asserting a claim based on a "class of one" theory, Mr. Hutchinson must allege he was
intentionally treated differently from other similarly situated inmates and that there was no
rational basis for the treatment. *See Phillips v. Cnty of Allegheny*, 515 F.3d 224, 243 (3d Cir.
2008). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are
alike in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)
(emphasis omitted). Mr. Hutchinson provides no factual allegations to support an equal
protection claim aside from the general allegation that his rights have been violated. Because
Mr. Hutchinson has not alleged that he was treated differently from those similarly situated, his
equal protection claim is not plausible. *See Tillman v. Lebanon Cnty. Corr. Fac.*, 221 F.3d 410,
424 (3d Cir. 2000) ("Where there is no discrimination, there is no equal protection violation.");
*Collura v. Disciplinary Bd. of Supreme Court of Pa.*, No. 11-5637, 2013 WL 4479141, at *7
(E.D. Pa. Aug. 22, 2013) ("Mr. Collura has failed to identify any similarly situated individual
whom [Defendants] ha[ve] treated differently. . . . Accordingly, Mr. Collura's Equal Protection
claim amounts to mere 'general accusations' which are insufficient to prevail on a § 1983
claim."), *aff'd sub nom. Collura v. Maguire*, 569 F. App'x 114 (3d Cir. 2014).

portion of the claim will be dismissed with prejudice because the absence of a television or vending machine does not constitute the denial of "the minimal civilized measure of life's necessities." *See McKinney v. Piazza*, No. 20-6963, 2022 WL 17668049, at *7 (D.N.J. Dec. 14, 2022) (noting that television, radio, and email privileges do not constitute necessities) (citing *Robinson v. Wetzel*, No. 11-1269, 2015 WL 12910723, at *5 (M.D. Pa. July 9, 2015), *report and recommendation adopted*, No. 11-1269, 2015 WL 12910757 (M.D. Pa. Sept. 21, 2015), *aff'd*, 648 F. App'x 168 (3d Cir. 2016) (explaining that "it is well-settled that an inmate has no constitutional right to watch TV in his cell, and that such a deprivation does not amount to cruel and unusual punishment"); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992) ("a prisoner who is denied . . . a television set has not set out a deprivation of [his rights under] . . . the eighth amendment"); *Scheanette v. Dretke*, 199 Fed. Appx. 336 (5th Cir. 2006) (denial of televisions to death row inmates not cruel and unusual because watching television is not a life necessity or a basic human need); *Elliott v. Brooks*, 188 F.3d 518 (10th Cir. 1999) (no constitutional right to watch television in prison). Mr. Hutchinson also does not explain how the denial of vending machine privileges on his tier has deprived him of any life necessity. He has not identified any item he is unable to purchase due to the lack of a vending machine, much less demonstrated that his inability to purchase that item deprives him of a minimal necessity of civilized life or creates an excessive risk to his health or safety. Accordingly, Mr. Hutchinson's claims regarding the lack of television and a vending machine are dismissed with prejudice for failure to state a claim for relief.

Mr. Hutchinson's claim that he is not permitted to sign up for GED classes is not plausible because it is well settled that prisoners have no constitutional right to education services in prison. *See Abraham v. Delaware Dep't of Corr.*, 331 F. App'x 929, 931 (3d Cir.

2009) ("Prisoners have no constitutional right to rehabilitation, education, or jobs") (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001) (same); *Knight v. State of Ariz.*, 39 F.3d 1187 (9th Cir. 1994) ("Inmates have no constitutional right to education or rehabilitation."). Mr. Hutchinson's claim regarding the denial of GED classes is also dismissed with prejudice for failure to state a claim upon which relief may be granted.

F.    **Deliberate Indifference to Medical Needs**

Mr. Hutchinson asserts that there are "no mental health programs" at Northampton County Prison, and Defendant Denise Doe has told him that "she can't do anything" about this. (Am. Compl. at 7.) The Court interprets Mr. Hutchinson's allegations about mental health programs as attempting to state a claim for deliberate indifference to a serious medical need. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4] *See Farmer*, 511 U.S. at 835; *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "A medical need is serious, . . . if it is one that has been

---

[4] Mr. Hutchinson was at times a pretrial detainee and at times a convicted and sentenced inmate during the relevant events. (Am. Compl. at 5.) The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Mr. Hutchinson has not provided any details about his alleged need for mental health programs. He has failed to allege that he has been diagnosed with a mental health condition or that he had a serious mental health condition that required treatment. His conclusory allegation that "Denise" told him that she couldn't do anything about the lack of "mental health programs" fails to assert a plausible deliberate indifference claim. *Iqbal*, 556 U.S. at 678. There are no factual allegations that any prison official knew of Mr. Hutchinson's need for mental health treatment and either intentionally refused to provide treatment, delayed providing treatment, or prevented him from receiving treatment. Mr. Hutchinson's allegations as currently pled are insufficient to state a constitutional claim. Thus, Mr. Hutchinson's deliberate indifference to medical needs claims will be dismissed without prejudice failure to state a claim. However, because the Court cannot say at this time that Mr. Hutchinson is incapable of curing these

defects, the claims will be dismissed without prejudice, and he will be given an opportunity to reassert the claims in an attempt to cure the defects.

### G.    Claims Based on Religion

The Court understands Mr. Hutchinson to be asserting a First Amendment Free Exercise claim based on his allegation that he is unable to attend church because there is "no church" at Northampton County Prison. (Am. Compl. at 7.) The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted).

The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (internal citations omitted). The Supreme Court has stated that "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Cruz*, 405 U.S. at 322 n. 2. "The requirement that a state interpose no unreasonable barriers to the free exercise of an inmate's religion cannot be equated with the suggestion that the state has an affirmative duty to provide, furnish, or supply every inmate with a clergyman or religious services of his choice." *Gittlemacker v. Prasse*, 428 F.2d 1, 4 (3d Cir. 1970).

Mr. Hutchinson's sole allegation that "no church" exists at Northampton County Prison does not demonstrate that a substantial burden has been placed on his ability to exercise his

religion.  Moreover, the First Amendment only protects sincerely held religious beliefs, not

"[t]he mere assertion" of a religious belief.  *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000).  Mr.

Hutchinson has not adequately alleged that practicing his religious beliefs has been burdened.

Indeed, Mr. Hutchinson does not explain how the absence of a physical "church" space prevents

him from exercising his faith.  Further, while he names the Northampton County Prison religious

coordinator Chris Gebhardt as a defendant, nothing in Mr. Hutchinson's allegations describes

how Mr. Gebhardt or any of the other named defendants were personally involved in placing a

substantial burden on his ability to observe or practice his religious beliefs.  Accordingly, the

Complaint does not state a plausible Free Exercise claim.  *See Peele v. Klemm*, 663 F. App'x

127, 130 (3d Cir. 2016) (*per curiam*) (upholding dismissal of First Amendment claim where

"Peele failed to provide any factual support for his First Amendment claims beyond general

conclusory allegations that DC-819 was inimical to his and possibly other inmates First

Amendment rights"); *Grohs v. Santiago*, No. 13-3877, 2014 WL 4657116, at *10 (D.N.J. Sept.

17, 2014) (dismissing free exercise claim where plaintiff "never identified his faith nor has he

identified the sincerely held religious beliefs that required him to retain [certain religious]

materials").

Mr. Hutchinson also asserts claims pursuant to RLUIPA.  "Congress enacted RLUIPA . .

. 'in order to provide very broad protection for religious liberty.'"  *Holt v. Hobbs*, 574 U.S. 352,

356 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)); *see* 42

U.S.C. § 2000cc, *et seq.*  The United States Supreme Court recently stated:

> RLUIPA provides that "[n]o government shall impose a substantial burden on the
> religious exercise of a person residing in or confined to an institution" - including
> state prisoners - "even if the burden results from a rule of general applicability,
> unless the government demonstrates that imposition of the burden on that person -
> (1) is in furtherance of a compelling governmental interest; and (2) is the least
> restrictive means of furthering that compelling governmental interest." 42 U.S.C.

§ 2000cc-1(a). A plaintiff bears the initial burden of proving that a prison policy "implicates his religious exercise." *Holt*, 574 U.S., at 360, 135 S. Ct. 853. Although RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," § 2000cc-5(7)(A), a prisoner's requested accommodation "must be sincerely based on a religious belief and not some other motivation," *id.*, at 360-361, 135 S. Ct. 853. The burden on the prisoner's religious exercise must also be "substantial[ ]." *Id.*, at 361, 135 S. Ct. 853.

*Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022). "For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007) (capitalization in original).

RLUIPA does not provide a basis for claims against individual officials in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012). Nor does RLUIPA provide a basis for money damages claims against states or their officials acting in their official capacities. *See Sossamon v. Texas*, 563 U.S. 277, 293 (2011) ("We conclude that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."). However, RLUIPA does permit claims for injunctive and declaratory relief against states and state officials. *Payne v. Doe*, 636 F. App'x 120, 125 (3d Cir. 2016). Here, however, Mr. Hutchinson simply has not explained how the lack of a physical church space at Northampton County Prison burdens his sincere religious exercise. Accordingly, Mr. Hutchinson's undeveloped allegations also do not state a plausible RLUIPA claim.[5]

---

[5] The Court notes that Mr. Hutchinson's First Amendment claim fails as well because "a claim that cannot satisfy RLUIPA's threshold merits inquiry necessarily fails as to the First

IV.     **CONCLUSION**

As set forth more fully above, Mr. Hutchinson's official capacity claims against

Defendants Warden Penchishen, Lieutenant Cruz, Correctional Officer Georges, Chris Gebhardt,

and Denise Doe will be dismissed with prejudice as duplicative of the claims against their

employers.  Mr. Hutchinson's RLUIPA claims against the individual defendants, and any claims

for monetary damages pursuant to RLUIPA will also be dismissed with prejudice pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii).  The Court concludes that amendment of these claims would be

futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that

district courts should dismiss complaints with leave to amend "unless amendment would be

inequitable or futile.").

Mr. Hutchinson's unconstitutional conditions of confinement claims are dismissed

without prejudice, with the exception of his claims concerning the lack of televisions and

vending machines on his tier and the inability to sign up for GED classes, which claims will be

dismissed with prejudice for the reasons set forth above.  Mr. Hutchinson's remaining claims are

dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Because the Court cannot

say at this time that Mr. Hutchinson cannot cure the defects in his remaining claims for (1)

municipal liability; (2) deliberate indifference to serious medical needs; and (3) denial of

religious freedom, these claims will be dismissed without prejudice pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii).  Cognizant of Mr. Hutchinson's *pro se* status, the Court will grant Mr.

Hutchinson yet another opportunity to "flesh out [his] allegations by . . . explaining in the

[second] amended complaint the 'who, what, where, when and why' of [his] claim." *See*

---

Amendment." *Adams v. Corr. Emergency Response Team*, 857 F. App'x 57, 60 (3d Cir. 2021)
(*per curiam*).

*Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019). Any second amended complaint must clearly describe the factual basis for Mr. Hutchinson's claims against the relevant defendants and how each defendant was personally involved in the alleged denial of his constitutional rights.

An appropriate Order follows, which provides further instruction as to amendment.

BY THE COURT:

_____
GENE E.K. PRATTER, J.